UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHARINA JADNE PARKER,

        Petitioner,

vs.                              Case No. 3:19-cv-1084-BJD-PDB

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
 et al.,

        Respondents.

_____

## **ORDER**

## I. **STATUS**

Petitioner Sharina Jadne Parker, an inmate of the Florida penal system, initiated this case by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) and an Initial Brief (Doc. 3). Through her Petition, she is challenging a state court (St. Johns County) conviction for second degree murder and kidnapping. She raises three grounds: (1) an involuntary plea; (2) the ineffective assistance of counsel for lack of defense preparation and failure to interview witnesses; and (3) the ineffective assistance of counsel for abandoning a valid motion to suppress. Petition at 5, 7, 8. Respondents filed a Response to Petition

(Response) (Doc. 8) and an Appendix (Doc. 9).[1]   Petitioner filed a Response to Attorney General (Doc. 15).   See Order (Doc. 5).

Respondents concede the Petition is timely filed.   Response at 7-8.   The Court concludes no evidentiary proceedings are required in this Court.[2]   The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess the claims without any further factual development.   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021). For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and

---

[1] Respondents filed an Appendix (Doc. 9).   The Court hereinafter refers to the exhibits contained in the Appendix as "Ex."   Where provided, the page numbers referenced in this opinion are the Bates stamp numbers.   Otherwise, the page number on the particular document will be referenced.   The Court references the docket and page numbers assigned by the electronic filing system for the Petition and Response.

[2] Petitioner received an evidentiary hearing in the state court on his second and third grounds.   Ex. H at 641-92.   The state circuit court summarily denied the first ground.   Id. at 69-75.

Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district court must employ a very deferential framework.   Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), cert. denied, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).   "Under the 'unreasonable application' clause, a federal habeas court may grant

> the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case."   Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This high hurdle is not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

### III.   EXHAUSTION AND PROCEDURAL DEFAULT

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747-748, 111 S. Ct. 2546; Sykes,[4] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g.,

---

3  Coleman v. Thompson, 501 U.S. 722 (1991).

4  Wainwright v. Sykes, 433 U.S. 72 (1977).

> <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted state court remedies.   <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert. denied</u>, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman</u>, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   <u>Wright v.</u>

6

Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If

cause is established, a petitioner must demonstrate prejudice.     To

demonstrate prejudice, a petitioner must show "there is at least a reasonable

probability that the result of the proceeding would have been different had the

constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred

claim if he satisfies the actual innocence "gateway" established in Schlup v.

Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a

constitutional error at trial from causing a miscarriage of justice and conviction

of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d

1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert.

denied, 569 U.S. 1004 (2013).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar

two-part Strickland standard."   Knight v. Fla. Dep't of Corr., 958 F.3d 1035,

1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   Pursuant to this

standard, "a defendant must show that (1) his counsel's performance was

deficient and (2) the deficient performance prejudiced his defense.   Strickland,

v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   We

need not address both prongs if a petitioner makes an insufficient showing on one prong.  Id. at 697.

To prevail, a petitioner must successfully show her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"  Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687), cert. denied, 142 S. Ct. 1234 (2022).  Additionally,

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.  Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).  Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

8

The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>Finch v. Vaughn</u>, 67 F.3d 909, 914 (11th Cir. 1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity. Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible based on the record.

## V.   GROUND ONE

**Ground 1: Involuntary Plea.**

Petitioner contends that after an ex-parte communication off the record, with the trial judge, prosecutor, and defense counsel present, her attorney, influenced by the trial court and the prosecutor, abandoned the motion to suppress and coerced, manipulated, and intimidated Petitioner into entering a plea. Petition at 5. She raised a similar but not identical claim in the state court in an amended Rule 3.850 motion. Ex. H at 7-8, 42-43. Petitioner alleged her counsel coerced, manipulated, and intimidated Petitioner to enter

9

a no contest plea, telling Petitioner that if she did not enter into a plea agreement, she would definitely be given the maximum sentence allowed by law: life.   <u>Id</u>. at 42.   Petitioner stated counsel presented the plea agreement as the only alternative to the maximum sentence of life.   <u>Id</u>.   Thus, Petitioner claimed counsel coerced her into entering the plea.   <u>Id</u>.

Respondents contend ground one, as it is currently framed, is procedurally barred as it was not properly presented to the circuit court and could not be presented for the first time on appeal of the denial of the Rule 3.850 motion.   Response at 11 (citing <u>Griffin v. State</u>, 866 So. 2d 1, 11 n.5 (Fla. 2003) (per curiam) (finding postconviction claim raised initially on appeal is procedurally barred)).   Additionally, Respondents argue that Petitioner's attempt to change the claim on appeal was outside the two-year time limitation for presenting a Rule 3.850 motion.   Response at 11.   Thus, they urge the court to find the claim procedurally defaulted as Petitioner attempted to raise the claim in a manner not permitted by state procedural rules and in an untimely fashion.   <u>Id</u>.

Upon review, "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and

actual prejudice from the default." <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir.) (citations omitted), <u>cert. denied</u>, 513 U.S. 1061 (1994).   Any further attempts to seek relief in the state courts on this issue will be unavailing.   As such, Petitioner has procedurally defaulted ground one, as it is framed in the Petition.

As Petitioner is procedurally barred from raising ground one, she must demonstrate cause and prejudice.   Upon review, this Court concludes she has failed to show cause and prejudice.   She has also failed to show that failure to address ground one on the merits would result in a fundamental miscarriage of justice.   This Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

The Court finds ground one is procedurally defaulted, and the fundamental miscarriage of justice exception is inapplicable.   As such, Petitioner is barred from pursuing ground one.

In the alternative, to the extent Petitioner exhausted a claim of an involuntary plea/ineffective assistance of counsel, the claim is due to be denied. Applying the <u>Strickland</u> and <u>Hill</u> standards, the circuit court denied this claim of ineffective assistance of trial counsel inducing an involuntary plea.   Ex. H at 70-73.   The Fifth District Court of Appeal (5th DCA) affirmed per curiam. Ex. O.   The mandate issued September 9, 2019.   Ex. Q.

In summarily denying post-conviction relief, the circuit court found counsel's performance was not deficient because counsel accurately assessed the situation.   Ex. H at 71-72.   If Petitioner had been convicted of first-degree murder, with which she was charged, the only sentence permitted under law would have been life imprisonment, exactly what counsel advised.[5]   The court, in denying relief, also referenced the plea colloquy, stating it demonstrated Petitioner's plea was voluntary as Petitioner did not express that her plea was coerced.   Id. at 72.   She responded in the negative when asked if anybody used force, threats, pressure, or intimidation to get her to enter into a plea. Id.   In addition, Petitioner explained her reasoning for accepting the plea offer, stating she wanted to be able to present mitigation that would never be heard by a jury, but could be heard by the court, and she did not want to risk a life sentence by going to trial.   Id. at 72-73.   Additionally, the court noted, defense counsel confirmed that he believed there was a real risk that a jury would convict Petitioner and the court would then be obliged to impose a life sentence, but through accepting a plea offer, Petitioner had the ability to present mitigating evidence to persuade the court to give her a reduced

---

5 The record shows Petitioner was indicted on the charge of first-degree murder (firearm). Ex. A at 11.   Thereafter, the state filed a notice of intent to not seek the death penalty.   Id. at 68.   Thus, if Petitioner had gone to trial on the first-degree murder charge and had been found guilty, the only sentence permitted under state law was life imprisonment.

sentence.   Id. at 73.   After considering controlling case law and the record, the court found counsel's performance was not deficient and denied relief.   Id.

In denying post-conviction relief, the circuit court properly applied the two-pronged Strickland standard of review.   Of import, if a petitioner fails to satisfy one Strickland prong, it is not necessary for a court to analyze whether the petitioner satisfies the other prong.   Strickland, 466 U.S. at 691-92.   As such, the circuit court was not required to analyze the prejudice prong once it found Petitioner failed to satisfy the performance prong.

Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland and Hill.   Further, Petitioner has not shown the state court unreasonably applied Federal law or unreasonably determined the facts.   Indeed, upon review, the state court was objectively reasonable in its inquiry and in denying this ground for post-conviction relief.   Petitioner has failed to show a reasonable probability exists that the outcome of his case would have been different if his counsel had given the assistance that Petitioner has alleged he should have provided.   Indeed, without satisfying the performance prong as set forth in Strickland, Petitioner cannot prevail on his claim of ineffective assistance of counsel resulting in an involuntary plea.   Furthermore, the 5th DCA affirmed.

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.  Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.  The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u> or based on an unreasonable determination of the facts. As such, Petitioner is not entitled to habeas relief on ground one of the Petition.

Finally, in her Amended Initial Brief of Appellant, Petitioner presented her contention concerning an ex parte communication, referencing comments made by counsel at the post-conviction evidentiary hearing.  Ex. I at 8-14. The evidentiary hearing record demonstrates the following.   Defense counsel, Richard Kuritz, testified he moved to suppress all of the interviews, but he believed he would prevail on all but the last interview, as the detectives had done everything they were supposed to do for the last interview.    Ex. H at 676. For the last interview, when Petitioner initiated contact with the detectives, the detectives gave Petitioner <u>Miranda</u>[6] warnings, and everything was appropriately carried out.   <u>Id</u>.   Counsel explained, jury selection had been conducted and a hearing on the motion to suppress was undertaken.   <u>Id</u>. at

---

[6] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

678.   In the middle of the hearing, the judge called a sidebar, and a decision was made to discuss matters in chambers.   <u>Id</u>.   The prosecutors and Mr. Kuritz went to speak to the judge "to figure out how much time we're going to take and what – where we're going with this."   <u>Id</u>.

Mr. Kuritz said everyone conceded that the earlier interviews were not coming in, but the final interview, Mr. Kuritz could not circumvent.   <u>Id</u>.   The court did not enter an order on the motion to suppress, but Mr. Kuritz knew he was not going to be able to prevail on the issue of the last interview.   <u>Id</u>. Mr. Kuritz told Petitioner that the last interview was the problem, and it would come in.   <u>Id</u>.   As a consequence, the defense made a concerted effort to obtain a favorable plea offer, and managed to obtain an acceptable offer over the weekend.   <u>Id</u>. at 679-80.

Upon review, based on Mr. Kuritz's testimony, the trial court took a break during the suppression hearing to consider how much time it would take to complete the proceeding and to discuss where the parties thought they were going with the case.   Mr. Kuritz was convinced he would not prevail on the motion to suppress as to the last interview, and after informing Petitioner of such, he attempted to obtain a favorable plea offer, which he accomplished by obtaining an offer for a plea to second degree murder with a sentencing range of fifteen years (lower than the score sheet lowest permissible prison sentence

of 273.75 months) to thirty-five years for a life felony.   Ex. A at 239-40; Ex. B at 4-5.   Of import, at sentencing, the defense hoped to convince the trial court to sentence Petitioner to the low end of the range based on mitigation evidence.

At sentencing, the defense asked the court to consider a sentence between 15 and 25 years.   Ex. C at 205.   The state asked that the court sentence Petitioner to 35 years in prison.   Id. at 215.   The court sentenced Petitioner to 30-year concurrent sentences.   Id. at 221, 224.   The court explained its decision, noting the state made a legitimate and reasonable offer, the range was consistent with the possibilities, and the court accepted some of Petitioner's position rejecting the state's request to give Petitioner 35 years, but declined to accept some of Petitioner's position and denied the defense's request to give less than 30 years.   Id. at 222-23.

As for Petitioner's contention that her counsel coerced her into entering an involuntary plea, Petitioner faces the formidable barrier of her sworn testimony and representation at the plea hearing.   Her solemn declarations are not taken lightly and carry a strong presumption of verity.   After being sworn in, she told the court she wanted to enter a plea.   Ex. B at 6.   When asked if anybody had used any force, threats, pressure, or intimidation go get her to enter the plea, Petitioner responded in the negative.   Id. at 12.   She said there were no other promises made other than the plea agreement.   Id.

at 13.   She attested she understood the agreement and the terms of sentencing.   Id. at 13-14.   Petitioner said she spoke with counsel about the case and the plea, and she was satisfied with counsel's representation.   Id. at 15.   Petitioner attested she believed the plea was in her best interest.   Id. at 17.   At sentencing, she stated her belief that she did not want to risk going to trial and face a sentence of life in prison.

Petitioner is not entitled to habeas relief on ground one.   Her attempt to seek to go behind her previously sworn testimony given during the plea proceeding is not well taken.   At the plea proceeding, Petitioner expressed her position that she was accepting the plea offer because she believed it to be in her best interest.   Of import, she avoided facing a life sentence by pleading to a reduced charge of second-degree murder and kidnapping with a negotiated range for the sentences.   She received the benefit of the bargain as she is serving a prison term of thirty years, concurrent, within the terms of the agreement.   As such, ground one is due to be denied.

## VI.   GROUND TWO

**Ground Two: Counsel ineffective for lack of defense preparations and failure to interview witnesses.**

In support of this ground, Petitioner asserts defense counsel failed to depose two witnesses:   Kedra Clark and David Buggest.[7]   Petitioner asserts these witnesses provided favorable evidence.   Petition at 7.

Upon review, Petitioner raised a comparable claim in her Rule 3.850 motion, although she claimed counsel failed to interview the witnesses.   Ex. H at 9-10.   At the evidentiary hearing, Petitioner told the court she meant to allege that counsel failed to depose the two witnesses.   Ex. H at 664. Petitioner said Ms. Clark was present at the scene of the initial robbery.   Id. at 651, 653.   Petitioner admitted counsel interviewed Ms. Clark and Mr. Burgess.   Id. at 655-57.

Mr. Kuritz testified he did interview the two witnesses.   Id. at 670. After interviewing these witnesses, Mr. Kuritz did not believe the two witnesses would help a defense claiming duress.   Id. at 673-74.   Moreover, Mr. Kuritz thought their testimony would be damaging, with Ms. Clark's testimony encompassing a drug deal that Petitioner orchestrated and an armed robbery which took place during the drug deal, and with Mr. Buggest's testimony revealing an argument between Petitioner and the victim shortly

---

[7] Petitioner referred to the two witnesses as Kendra Clark and David Burgess; however the circuit court referred to the witnesses as Kedra Clark and David Buggest.

before the kidnapping and murder.   <u>Id</u>. at 674-75.   Mr. Kuritz concluded these witnesses would not be supportive to the defense.

After an evidentiary hearing, the circuit court soundly rejected Petitioner's claim of ineffective assistance of counsel.   Ex. H at 355-57. Initially, the court noted that Petitioner conceded that counsel did interview the witnesses, but she now claimed counsel should have deposed the witnesses. <u>Id</u>. at 356.   Notably, the court found that neither of these witnesses were present during the kidnapping and murder.   <u>Id</u>.   "According to Mr. Kuritz, Clark and Buggest's information would shed no light on the Defendant's assertion she was under duress during the kidnapping and murder and their information was not helpful to the Defendant."   <u>Id</u>. at 356-57.   As such, counsel decided not to depose the two witnesses.   <u>Id</u>. at 357.

The court credited Mr. Kuritz's experience, having practiced criminal law for twenty-five years, handling criminal cases, including murder cases. <u>Id</u>.   Further, the court found counsel's strategic decision to not depose the witnesses or call the witnesses after interviewing them, was well within the wide range of reasonably competent performance under prevailing professional norms.   <u>Id</u>.   The court concluded Petitioner failed to establish deficient performance of counsel.   <u>Id</u>.

In failing to satisfy the performance prong of <u>Strickland</u>, Petitioner's claim of ineffective assistance of counsel will not prevail.   The record confirms Petitioner had very experienced counsel.   "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Callahan v. Campbell</u>, 427 F.3d 897, 933 (11th Cir. 2005)), <u>cert. denied</u>, 547 U.S. 1133 (2006).

A defense attorney's decision as to whether to present witness testimony is a strategic one, left within counsel's domain.   <u>Chaflin v. Sec'y, Dep't of Corr.</u>, No. 6:09-cv-2055-Orl-31KRS, 2011 WL 280940, at *3 (M.D. Fla. Jan. 26, 2011) (not reported in F.Supp.2d).   Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir.) (citation omitted), <u>cert. denied</u>, 516 U.S. 856 (1995).   Giving the wide latitude allowed to counsel in making strategic decisions, especially after counsel has interviewed the witnesses, the Court concludes counsel's performance did not fall outside the norm.   The decision not to depose Ms. Clark and Mr. Buggest and rely on them as defense witnesses, a tactical decision, did not amount to deficient performance.

There is a strong presumption that an experienced trial counsel's performance is not ineffective, and here, the state court, in denying relief, found Petitioner failed to overcome the presumption of effective performance accorded to his counsel.   The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 5th DCA's decision is entitled to AEDPA deference.   Ex. O.   After applying the look-through presumption set forth in Wilson, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of Strickland and its progeny.   Thus, Petitioner is not entitled to habeas relief on ground two.

## VII.   GROUND THREE

**Ground Three: Counsel ineffective for abandoning a valid motion to suppress.**

Respondents submit that defense counsel did not abandon the motion to suppress, nor did he provide Petitioner with false information.   Response at 17.   Instead, Respondents contend, defense counsel provided Petitioner with sound legal advice, telling Petitioner that her inculpatory statement had no likelihood of being suppressed.   Id.

The circuit court conducted an evidentiary hearing on this ground. Although Petitioner gave multiple statements to law enforcement, it was her

last statement which defense counsel found to be problematic in that Petitioner had reinitiated contact with law enforcement, law enforcement gave Petitioner <u>Miranda</u> warnings, and Petitioner provided law enforcement with a wealth of information.   Mr. Kuritz attested that he never told Petitioner that the judge had denied the motion.   Mr. Kuritz testified he told Petitioner that there was no realistic chance of prevailing on the motion to suppress as to that last statement.

At the evidentiary hearing, Petitioner testified that Mr. Kuritz told her the motion to suppress had been denied.   Ex. H at 649.   She testified, had she known it had not been denied, she would have not entered a plea as she believed it was a strong motion to suppress.   <u>Id</u>. at 650.

Mr. Kuritz testified, he "was not going to be able to get out from under that one [the last statement]."   <u>Id</u>. at 676.   He repeated that it was clear he was not going to prevail on that last statement.   <u>Id</u>. at 678.   He testified that is what he advised Petitioner.   <u>Id</u>.   Mr. Kuritz explained: "I said we're not gonna win it because the judge said we will come back, we will do what we need to do, but we all kind of agreed I'm not going to win this one, so I never said, you know, he denied it.   No, I never said that."   <u>Id</u>. at 684.

The court asked counsel if he knew all along he was going to have a problem with the last statement, and Mr. Kuritz responded in the affirmative.

Id.   Mr. Kuritz said he discussed that with Petitioner.   Id.   Finally, Mr. Kuritz reiterated: "I did not say Judge Traynor denied it.   I just said, we are not going to win this one."   Id. at 685.

Petitioner raised a similar claim in ground three of her Rule 3.850 motion.   Ex. H at 11, 46.   Petitioner claimed her counsel provided false information, telling Petitioner the motion to suppress "was denied," in order to coerce Petitioner into entering a plea.   Id. at 46.   Petitioner believed the trial court would have granted the motion to suppress, but "counsel never consummated the Motion to the Court."   Id.

In denying the Rule 3.850 motion, the circuit court found counsel's testimony to be credible and Petitioner's testimony to not be credible.   Id. at 358.   This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)), cert. denied, 568 U.S. 849 (2012).   See Raheem, 995 F.3d at 929 (noting, determining the credibility of witnesses is the province and function of the state courts, not the reviewing federal court).   Since the circuit court observed Mr. Kuritz's testimony and found it more credible, it is not up to this Court to make a redetermination.   Furthermore, Petitioner has

not rebutted the presumption of correctness to the state court's factual determination that Petitioner's testimony was less credible than her counsel's testimony.   See 28 U.S.C. § 2254(e)(1).

The circuit court opined:

> The Court further finds that Mr. Kuritz's advice to the Defendant that he did not believe they would prevail on a Motion to Suppress the Defendant's last statement to police, and she should consider a plea, was sound advice.   Defendant was facing life imprisonment if convicted at trial, which seemed highly likely considering her inculpatory statement that was not likely to be suppressed.   Mr. Kuritz's advice to plead to a sentencing range of 15 to 30 years on a reduced charge of Second Degree Murder and Kidnapping, under the circumstances, was very sound legal advice.

Ex. H at 358.

The court applied the Strickland two-pronged standard and found Petitioner had failed to establish any deficient performance by her attorney as his advice and performance was clearly within the wide range of reasonably competent counsel.   In failing to satisfy the performance prong of Strickland, Petitioner's claim of ineffective assistance of counsel will not prevail.

The trial court properly applied the Strickland standard of review; therefore, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254 (d)(1) as the state court rejected the claim based on Strickland.   Further,

24

Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonable determined the facts.   Here, the state court was objectively reasonable in its <u>Strickland</u> inquiry.   The 5th DCA affirmed.   Ex. O.

The unexplained decision of the 5th DCA is entitled to deference pursuant to AEDPA.   Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established Federal law or based on an unreasonable determination of the facts.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that the state court proceeding was fundamentally unfair and her counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth Amendment violation under the Constitution.   The Court finds Petitioner is not entitled to habeas relief.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of her Petition (Doc. 1), **the Court denies a certificate of appealability**.[8]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of May, 2022.

BRIAN J. DAVIS
United States District Judge

sa 4/29
c:
Sharina Jadne Parker
Counsel of Record

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

26